**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BALSAMO AND NORINO | * | |
| PROPERTIES, LLC, | * | |
| | | |
| PLAINTIFF, | * | |
| | | |
| v. | * | Civil Action No. RDB-20-2425 |
| | | |
| PNC BANK, N.A., | * | |
| | | |
| | * | |
| DEFENDANT. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Balsamo and Norino Properties, LLC ("Plaintiff" or "BNP") filed suit against Defendant PNC Bank, N.A. ("Defendant" or "PNC") alleging wrongful dishonor in violation of Md. Code Ann., Com. Law § 4-402(a) as well conversion and breach of contract under Maryland common law. Specifically, BNP claims that PNC wrongfully placed holds on two of its bank accounts and dishonored several of its checks. BNP originally filed this suit in the Circuit Court for Baltimore City, Maryland. *See* Case No. 24-C-20-002976. PNC removed this case to this Court on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a). (Notice of Removal, ECF No. 1.)

Presently pending before this Court is PNC's Motion for Summary Judgment (ECF No. 45). Also pending before this Court are BNP's Motion to Consolidate Cases (ECF No. 35), BNP's Motion for Leave to File First Amended Complaint (ECF No. 41), and BNP's Motion to Modify Scheduling Order (ECF No. 58). The parties submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md 2021). For the reasons set

forth below, PNC's Motion for Summary Judgment (ECF No. 45) is GRANTED, and

judgment shall be entered in favor of PNC. BNP's Motion to Consolidate Cases (ECF No.

35) and Motion to Modify Scheduling Order (ECF No. 58) are DENIED AS MOOT.

BNP's Motion for Leave to File First Amended Complaint (ECF No. 41) is DENIED.

## BACKGROUND

Plaintiff Balsamo and Norino Properties, LLC is a Maryland limited liability company

with its principal place of business in Baltimore County, Maryland. (Compl. ECF No. 1-3 ¶

1.) Its two members are John Zorzit and Joseph Balsamo, Sr. (ECF No. 45-1 at 1; ECF No.

52 at 2.) At all times since the creation of BNP on November 18, 1998, Zorzit and Balsamo

have each been 50% owners in the company. (ECF No. 45-1 at 2.) Defendant PNC Bank,

N.A. is a national bank headquartered in Pittsburgh, Pennsylvania with locations throughout

Maryland. (ECF No. 1-3 ¶ 2.) PNC Bank, N.A. is the successor-in-interest to PNC Bank,

Delaware. (*Id.* ¶ 3.)

In or about August 2009, BNP opened an account ending in 2466 with PNC Bank

Delaware. (*Id.* ¶ 7.) BNP's business relationship with PNC was governed by PNC's Account

Agreement for Business Accounts. (*Id.* ¶ 10.) The account agreement states: "We may place

a hold on your Account in the amount of any funds for which there may be an adverse claim

when we investigate the claim or until ownership pf the funds is established to our

satisfaction." (ECF No. 45-1 at 3; ECF No. 1-3 ¶ 11.) PNC Bank, Delaware later merged

with PNC Bank, N.A. (Id. ¶ 8.) In October 2016, BNP opened a second account ending in

6419 with PNC Bank, N.A. (Id. ¶ 9.) The Account Registration and Agreement for the 6419

account stated that BNP was a "single-member LLC" with Zorzit as its sole member. (ECF No. 45-1 at 3; ECF No. 52 at 3.)

On February 24, 2020, attorneys for Balsamo communicated to counsel for Zorzit that the documents associated with the 6419 account incorrectly identified BNP as a single-member LLC and instructed Zorzit to correct the error by March 6, 2020 or else Balsamo and his attorneys would notify PNC of Balsamo's interest in the BNP accounts. (ECF No. 45-1 at 3; ECF No. 52 at 3.) On or about February 27, 2020, Zorzit signed a form Certification provided by PNC identifying himself and Balsamo as 50% beneficial owners of BNP. (EF No. 45-1 at 3; ECF No. 52 at 3.)

On March 9, 2020. Balsamo visited a PNC branch and expressed dissatisfaction with the way the 6419 account had been opened and with the fact that, as a 50% owner of the LLC, he was neither an authorized signatory nor someone with authority to obtain information regarding transactions in the 6419 account. (ECF No. 45-1 at 4.) On March 11 2020, Counsel for Balsamo, Christopher Macchiaroli, sent PNC a letter objecting to the manner in which the 6419 account had been opened by Zorzit without Balsamo's knowledge and demanding documents and information related to the account. (ECF No. 45-1 at 4; ECF No. 52 at 4.) PNC understood from the letter that Balsamo continued to dispute the manner in which the 6419 account had been opened and to assert rights in the account. PNC subsequently placed a hold on the account. (*Id.*)

On June 1, 2020, Joseph Balsamo, Sr. and Joseph Balsamo, Jr. visited a PNC branch on Wilkens Avenue in Baltimore. (ECF No. 45-1 at 5.) There, they expressed dissatisfaction with the way the 2466 account was being managed. PNC maintains that it understood

Balsamo, Sr. to be asserting a claim to the funds in the 2466 account that was adverse to

Zorzit's, and that its representatives advised that it would be appropriate to place a hold on

the 2466 account until ownership of the funds could be established to PNC's satisfaction.

(ECF No. 45-1 at 5.) PNC then placed a hold on the account. (*Id.*) As of July 6, 2020, the

6419 account had a balance of $84,557.95, and the 2466 account had a balance of

$232,160.75. (ECF No. 1-3 ¶ 21)

On July 13, 2020, Zorzit's counsel filed this suit on behalf of BNP against PNC in the

Circuit Court for Baltimore City, Maryland asserting claims arising from the holds placed on

BNP's two accounts. *See Balsamo and Norino Properties, LLC v. PNC Bank, National Association*,

No. 24-C-20-00 2976 OT. On August 21, 2020, PNC removed this case to this Court on the

basis of diversity of citizenship jurisdiction. (Notice of Removal, ECF No. 1.) Even after this

case was filed, Zorzit and Balsamo continued to dispute the issues that had arisen regarding

authority over the BNP accounts. On October 9, 2020, PNC filed an interpleader action in

this Court.[1] *See* Complaint, *PNC Bank, N.A., v. Balsamo and Norino Properties, LLC*, Civil

Action No. RDB-20-2922 (D. Md. Oct. 9, 2020), ECF No. 1. On October 20, 2021, PNC

filed its Motion for Summary Judgment in this. (ECF No. 45.)

---

[1] In a Memorandum Opinion dated June 16, 2021, this Court denied Defendants BNP and Zorzit's Motion to Dismiss the interpleader action. Memorandum Opinion, *PNC Bank, N.A., v. Balsamo and Norino Properties, LLC*, Civil Action No. RDB-20-2922 (D. Md. June 16, 2021), ECF No. 46. On August 12, 2021, this Court authorized PNC to deposit into the registry of this Court the proceeds of BNP's accounts in the total sum of $331,844.69 and discharged PNC from further liability with respect to the proceeds of those accounts. Order, *PNC Bank, N.A., v. Balsamo and Norino Properties, LLC*, Civil Action No. RDB-20-2922 (D. Md. Aug. 12, 2021), ECF No. 55. That case remains pending awaiting resolution of the motions in this case.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences "in the light most favorable to the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that a trial court may not make credibility determinations at the summary

judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650 (2014).

## ANALYSIS

### I.      Wrongful Dishonor Claim (Count I)

PNC is entitled to summary judgment on BNP's wrongful dishonor claim because the claim fails as a matter of law. BNP alleges that PNC wrongfully dishonored seven checks in the total amount of $2,392.55 in violation of Md. Code Ann., Com. Law § 4-402(a). (ECF No. 1-3 ¶¶ 14, 22-26.) Section 4-402(a) imposes liability on a bank that "wrongfully dishonors an item if it dishonors an item that is properly payable." Md. Code Ann., Com. Law § 4-402(a). As Judge Motz of this Court has noted, "As a general matter, Maryland Commercial Code 402 does create a claim for wrongful dishonor. However, Maryland law recognizes that '[t]he relationship between a bank and its customer is contractual.'" *Intercontinental Dev. Corp. v. Wells Fargo Bank, N.A.*, No. JFM-12-1791, 2012 U.S. Dist. LEXIS 163417, at *1-2 (D. Md. Nov. 13, 2012) (citing *Lema v. Bank of America, N.A.*, 375 Md. 625, 826 A.2d 504, 511 (Md. 2003)). In this case, BNP's relationship with PNC is governed by the applicable account agreements, which state that PNC may "place a hold on your Account in the amount of any funds for which there may be an adverse claim . . . until ownership of the funds is established to our satisfaction." (ECF No. 45-1 at 8; ECF No. 52 at 7.) Maryland law is clear that parties may alter the effect of provisions of the Commercial Code by contract. *See, e.g.*, *Lema v. Bank of Am., N.A.*, 375 Md. 625, 636, 826 A.2d 504, 510 (2003). Therefore, any claims BNP may have against PNC for wrongful dishonor as a result of its accounts having been frozen are properly brought in a breach of contract action.

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED as to Count I.

## II.   Conversion Claim (Count II)

BNP's conversion claim likewise fails as a matter of law. BNP alleges that PNC, as a depository of BNP's funds, held dominion of BNP's money and improperly took control over $316,718.70 when it froze the two accounts. (ECF No. 1-3 ¶¶ 27-33.) Maryland defines conversion as "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 841 A.2d 828, 835 (Md. 2004) (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 731 A.2d 957, 963 (Md. 1999)). Historically, conversion was applicable only to tangible property, but the tort has expanded to include certain types of intangible property. *Allied Inv. Corp.*, 731 A.2d at 963-964. The Maryland Court of Appeals has acknowledged that although monies are intangible, they can be subject to a conversion claim both when the property rights to certain funds are merged or incorporated into a transferable document and "when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Allied Inv. Corp.*, 731 A.2d at 966; *see also Diane Sales, Inc. v. Am. Express Centurion Bank*, Civil Action No. GLR-14-1063, 2014 U.S. Dist. LEXIS 186373, at *6-7 (D. Md. July 14, 2014).

Maryland courts have held that the relationship between a bank and its customers is one of debtor to creditor. *Suburban Trust v. Waller*, 44 Md. App. 335, 408 A.2d 758, 762 (Md. Ct. Spec. App. 1979); *accord Keller v. Fredericktown Sav. Inst.*, 193 Md. 292, 66 A.2d 924, 926 (Md. 1949) (recognizing that a bank owns the money deposited by its customers, "subject to

the right of the depositor to draw on it"). Therefore, as this Court has held in other cases, BNP has an intangible property right to the funds in its PNC accounts. *See, e.g., Diane Sales, Inc. v. Am. Express Centurion Bank*, Civil Action No. GLR-14-1063, 2014 U.S. Dist. LEXIS 186373, at *8 (D. Md. July 14, 2014). In order to state a claim for conversion of those funds, BNP must plead "facts alleging that tangible documents evidenced those [intangible] property interests and that the documents were transferred improperly [by PNC]." *Allied Inv. Corp.*, 731 A.2d at 965. In this case, BNP makes no allegation and does not argue in its Opposition that PNC ever transferred a document embodying BNP's right to control the funds in the accounts. BNP alleges only that PNC improperly froze the accounts. Because BNP does not allege the existence of such a document, and because the record is devoid of evidence of the existence of such a document, BNP is unable to establish a necessary element of a conversion claim where the converted property is intangible. *See Chappell v. Friedman*, No. RWT 09-311, 2009 U.S. Dist. LEXIS 64191, at *9 (D. Md. July 23, 2009). Accordingly, Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED as to Count II.

## III.   Breach of Contract Claim

BNP's breach of contract claim also fails as a matter of law. BNP alleges that PNC improperly froze its accounts and dishonored seven of its checks in violation of the terms of the governing account agreements. (ECF No. 1-3 ¶¶ 34-38.) Under Maryland law, "[t]he elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011). In

its Opposition to Defendant's Motion for Summary Judgment, BNP does not substantively engage with PNC's argument that BNP cannot demonstrate breach of the terms of the account agreements.[2] Instead, BNP notes that its breach of contract claim "is an alternative to Counts I and II, seeking relief under a theory of contract as opposed to the tort theories," and asserts that there is a dispute of fact as to whether BNP sustained damages in the form of fees resulting from the dishonored checks (ECF No. 52 at 16.)

The applicable account agreement provides that PNC may place a hold on an account "in the amount of any funds for which there may be an adverse claim when we investigate the claim *or* until ownership of the funds is established to our satisfaction." (ECF No. 57 at 5.) (emphasis added). To the extent BNP argues that PNC did not conduct an adequate investigation in accordance with its contractual duties, PNC correctly notes that the agreement uses disjunctive language and clearly contemplates a possibility that a hold can remain in place until the claimants have resolved the dispute to the satisfaction of PNC. (*Id.*) BNP has come forward with no evidence to show a breach of the account agreement. Therefore, its breach of contract claim fails. *See Austin v. Clark Equip. Co.*, 48 F.3d 833, 836 (4th Cir. 1995) ("When the moving party has carried its burden, the nonmoving party must come forward with evidence which shows more than some 'metaphysical doubt' that genuine and material factual issues exist"). Accordingly, Defendant's Motion for Summary

---

[2] *Cf., Muhammad v. Maryland*, No. ELH-11-3761, 2012 U.S. Dist. LEXIS 38225, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."); *Aletum v. Adecco USA, Inc.*, Civil Action No. GLR-20-703, 2021 U.S. Dist. LEXIS 74818, at *6 (D. Md. Apr. 19, 2021) (same).

Judgment (ECF No. 45) is GRANTED as to Count III. Judgment shall be entered for Defendant on all counts.

## IV.   BNP's Motions

BNP has filed a series of motions in this case. First, BNP moves to consolidate this case with the interpleader action, *PNC Bank, N.A., v. Balsamo and Norino Properties, LLC*, RDB-20-2922. (ECF No. 35.) Since PNC is entitled to judgment in this case and this case will be closed, the Motion to Consolidate (ECF No. 35) is DENIED AS MOOT.

BNP has also filed a Motion for Leave to File First Amended Complaint (ECF No. 41). Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend a pleading "when justice so requires." The United States Court of Appeals for the Fourth Circuit has "interpreted [Rule] 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Laber v. Harvey*, 438 F.3d 404, 426 4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). "When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e). . . ." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999); *Tri-Partners, LLC v. Fiorenza*, Civil Action No. AW-00-3633, 2001 U.S. Dist. LEXIS 8245, at *4 (D. Md. Mar. 1, 2001). "In exercising its discretion under Section 1447(e), the district court [is] entitled to consider all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors

bearing on the equities." *Tri-Partners, LLC v. Fiorenza*, Civil Action No. AW-00-3633, 2001 U.S. Dist. LEXIS 8245, at *4-5 (D. Md. Mar. 1, 2001) (citations omitted).

In this case, BNP seeks to amend its Complaint by adding claims for tortious interference against Joseph Balsamo, Sr. and Joseph Balsamo, Jr., who, like BNP, are citizens of Maryland. (Proposed First Amended Complaint, ECF No. 41-2 ¶¶ 57-69.) BNP does not seek to add new claims or amend its existing claims against PNC. This Court determines that granting leave to amend would be prejudicial to PNC at this stage in the given that this case has been pending before this Court since August 21, 2020 and that BNP has known of its potential claims against the Balsamos since at least the time it learned of the facts giving rise to its claims against PNC. BNP waited over a year after this case was removed to this Court, and after the deadline established in this Court's scheduling order, to seek leave to amend its complaint to add the claims against the Balsamos. Furthermore, this Court concludes that BNP will suffer no prejudice if the amendment is not allowed because, as PNC notes, BNP can bring its claims against the Balsamos as cross-claims in the interpleader action, which is still pending before this Court. The equities in this case do not favor permitting BNP's amendment and remanding this case back to the Circuit Court for Baltimore City. Accordingly, BNP's Motion for Leave to Amend (ECF No. 41) is DENIED.

Finally, BNP has filed a Motion to Modify the Scheduling Order in this case. (ECF No. 58.) As noted above, this Court has concluded that PNC is entitled to judgment as a matter of law and has denied BNP leave to amend its Complaint. Accordingly, the Motion to Modify the Scheduling Order (ECF No. 58) is DENIED AS MOOT.

**CONCLUSION**

For the reasons stated above, PNC's Motion for Summary Judgment (ECF No. 45) is GRANTED, and judgment shall be entered in favor of PNC. BNP's Motion to Consolidate Cases (ECF No. 35) and Motion to Modify Scheduling Order (ECF No. 58) are DENIED AS MOOT. BNP's Motion for Leave to File First Amended Complaint (ECF No. 41) is DENIED.

A separate Order follows.

Dated: February 8, 2022

_____/s/_____
Richard D. Bennett
United States District Judge